No. 84-51

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

STATE OF MONTANA,

        Plaintiff and Respondent,

  -vs-

BRIAN BARKER,

        Defendant and Appellant.

APPEAL FROM:  District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable Charles Luedke, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

          Gary E. Wilcox, Billings, Montana

      For Respondent:

          Hon. Mike Greely, Attorney General, Helena, Montana
Harold F. Hanser, County Attorney, Billings, Montana

Submitted on Briefs:  June 28, 1984

Decided:  August 9, 1984

Filed:      AUG 9 - 1984

_Ethel M. Harrison_
———————————————————————
Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

Brian Barker appeals his judgment of conviction of attempt (felony) toward the commission of theft entered against him in the District Court, Thirteenth Judicial District, Yellowstone County. His judgment of conviction is the result of a jury trial. Barker was sentenced to ten years in prison, in part because of a previous criminal record, and later the court suspended the last seven years of his sentence.

On the day in question, April 12, 1983, Barker had consumed a considerable amount of liquor. At 5:00 p.m., he entered the Corral West Ranch Wear store in Billings. At the time, he was wearing a blue down-filled coat, blue jeans, a plaid flannel shirt and a pair of cowboy boots. The boots that he was wearing were the same color as boots that were displayed in the Corral West Ranch Wear store. The left boot that Barker was wearing was in new condition but the right boot was split along the side and the sole had also separated from the bottom of the boot. Barker had approximately $160 cash with him.

Barker testified that he looked at the boots in the store with the idea of replacing his boots. When he found that the ones that matched the boots he was wearing were not on sale, he picked both those boots off the shelf, walked to the door, dropped the left boot and put the right boot under his coat because that was the boot that he needed. He testified, and his girlfriend corroborated, that the right boot that he had been wearing was not capable of repair.

The store owner testified that at the time of the incident, Barker was the only customer in the store, that the

boot area of the store was checked approximately four minutes prior to the incident, and that it is straightened and checked every few minutes as a matter of course. The price at which the boots were offered for sale to the general public was $178.50. The store owner was just starting to go downstairs when Barker came into the premises. The owner was downstairs about 10 to 15 seconds and on his return to the top of the stairs, he heard a running sound. He looked and saw Barker running at a fairly fast rate toward the door. He saw a price tag protruding from Barker's jacket and gave chase. Another store employee, Brooks, also gave chase and caught Barker and returned him to the store with a right-footed boot that Barker had taken outside. When the store owner returned to the premises, he looked for the other boot and found it under a clothing rack at about the same point where he first saw Barker start running for the front door.

The store owner testified that the wholesale price of the boots was $116.50, and that one boot cannot be purchased.

There are other portions of evidence relating to the intoxication of Barker at the time, but they are not relevant here.

Barker raises two issues, (1) that the court erred in its instructions to the jury respecting market value, and (2) that the evidence was insufficient to justify the guilty verdict.

The District Court gave these instructions:

"INSTRUCTION NO. 18: When the value of property involved in theft exceeds $150.00, the theft is considered a felony; if the value of the property does not exceed $150.00, the theft is considered a misdemeanor.

"INSTRUCTION NO. 19: You are instructed that 'value' means the market value of the property at the time and place of the crime.

"INSTRUCTION NO. 20: You are instructed that 'market value' means the price at which the merchant, from whom it was unlawfully taken, offers to sell the property; that is, the retail price."

Barker contends that the court's instruction to the effect that the market value is the same as the retail price at which the merchant offers the goods is a comment on the evidence, mandatory in its nature, and it took from the jury the determination of a question of fact, the value of the property taken.

Under section 45-6-301, MCA, a person commits the offense of felony theft when he purposely or knowingly obtains or exerts unauthorized control over property of the owner and the value of the property exceeded $150.00. (This statute has since been amended so that $300.00 is now the line of demarcation between a felony and a misdemeanor, Ch. 581, Laws of Montana (1983).)

A person commits the offense of attempt when with a purpose to commit a specific offense, he does any act toward the commission of such offense. Section 45-4-103, MCA.

"Value" is defined as the market value at the time and place of the crime or, if such cannot be satisfactorily ascertained, the cost of the replacement of the property within a reasonable time after the crime. Section 45-2-101(69)(a), MCA.

We determine that in this case it was not error to instruct that the market value of the boots meant their retail price. Here there was no other evidence of the market value of the boots. Certainly here the wholesale price of the merchant could not be considered their market value.

While the instruction that the retail price of the merchandise was the market value of the property was mandatory in nature, and a comment on the evidence as well, it was a necessary instruction in this case where the only other evidence of the value of the boots was the wholesale value. The price at which the merchant offers to sell his merchandise ordinarily is its market value, though not always. See for example, State v. Young (Mont. 1983), 669 P.2d 239, 40 St.Rep. 1474.

The other two instructions are based on statutes and properly state the law.

In arguing the second issue, Barker contends that although he was admittedly guilty of a crime, he was guilty only of attempted misdemeanor theft as opposed to felony theft. He bases this contention on his testimony that in the store he picked up the pair of boots off the rack, and as he walked toward the door, he determined which was the right boot and which was the left. Having done so, he put the right boot under his jacket and put the left boot down on the floor. He contends that the store owner only assumed that the defendant had a pair of boots under his coat at the time he was first spotted. He argues that under the evidence, he intended to take only the right boot.

Still the evidence was undisputed that both boots were taken by him from the rack where they were displayed for sale and the one boot which he left was dropped in another part of the store under a counter where other clothes were displayed. Moreover, if his attempted theft of the single boot had been successful, he would have then destroyed the market value of both boots by the theft. There is, we think, a dearth of one-legged men in Billings who need a left-footed cowboy

boot. There is no weight to the second issue. In short, Barker has no leg to stand on.

We do commend Barker's counsel for the preparation of his brief. He has appended essential court documents as copies, which ease considerably the work of this Court when reference to documents is necessary for the purpose of considering the appeal.

Affirmed.

_____
Justice

We Concur:

_____

_____

_____
Justices

I respectfully dissent from that aspect of the majority opinion which approves Instruction 20.

The court instructed this jury that "market value" means the price at which a merchant offers goods for sale. The asking price is not necessarily market value. The instruction took this issue from the jury improperly. Market value is the price that a willing buyer will pay in a free and open atmosphere.

The burden of proof here was upon the State to show that the value of the property exceeded $150. The majority opinion relieves the State from its burden. The majority opinion states:

> "We determine that in this case it was not error to instruct that the market value of the boots meant their retail price. Here there was no other evidence of the market value of the boots. Certainly here the wholesale price of the merchant could not be considered their market value. While the instruction that the retail price of the merchandise was the market value of the property was mandatory in nature, and a comment on the evidence as well, it was a necessary instruction in this case where the only other evidence of the value of the boots was the wholesale value. . . "

The majority seems to be saying that where the State fails in its burden to produce evidence establishing value in excess of $150, but does offer evidence of retail price, the court through an instruction can remedy the problem by telling the jury they must accept retail price as market value. I am at a loss to understand the position the majority has here taken.

The majority concludes as follows:

> "There is, we think, a dearth of one-legged men in Billings who need a left-footed cowboy boot. There is no weight to the second issue. In short, Barker has no leg to stand on."

7

I have carefully and painstakingly searched this record but find no evidence to support the majority's reference to the number of one-legged men in Billings. Furthermore, I find that Barker does, indeed, have a leg upon which to stand. In fact, in my opinion, the trial court "booted" this case by giving Instruction 20.

I would reverse and remand for a new trial.

_____
Justice