No. 92-168

IN THE SUPREME COURT OF THE STATE OF MONTANA

1992

STATE OF MONTANA,

      Plaintiff and Respondent,

-vs-

CHARLES D. PIERCE and
WHITNEY H. FERDINAND,

      Defendants and Appellants,

APPEAL FROM:   District Court of the Tenth Judicial District,
In and for the County of Judith Basin,
The Honorable Peter L. Rapkoch, Judge presiding.

COUNSEL OF RECORD:

      For Appellants:

            Bradley B. Parrish, Attorney at Law, Lewistown,
Montana
Craig R. Buehler, Attorney at Law, Lewistown,
Montana

      For Respondent:

            Hon. Marc Racicot, Attorney General, Paul D.
Johnson, Assistant Attorney General, Helena,
Montana
James A. Hubble, Judith Basin County Attorney,
Stanford, Montana


FILED

NOV 24 1992

Filed: *Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

Submitted on Briefs:   October 9, 1992

Decided:   November 24, 1992

_____
Clerk

Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal from the Tenth Judicial District, Judith Basin County, the Honorable Peter L. Rapkoch presiding. Appellants Charles Pierce (Pierce) and Whitney Ferdinand (Ferdinand) were found guilty of felony burglary and felony theft after a bench trial on September 9, 1991. Pierce and Ferdinand appeal on the grounds that the District Court improperly denied their motion for reduction of the burglary charge to criminal trespass and their motion to dismiss the felony theft charge and replace it with a misdemeanor theft charge. We affirm.

On April 10, 1991, Pierce and Ferdinand were traveling west on Montana Highway 87, en route from Billings to Kalispell. Pierce was driving a pickup truck the pair had used to deliver a trailer for Pierce's family business in Kalispell. At Windham they turned off the highway onto an unpaved lane and drove about a quarter of a mile into the yard of an old farmstead known locally as the Ray place. It was 7:30 in the evening, still light enough for a witness to see the pickup turn off the highway and park in the farmyard. The witness was Ray Sherer, who leased the property and lived in a trailer at the junction of the lane and the highway.

Sherer testified that he saw the truck stop near a bunkhouse. He telephoned the property owner, John Tripp, who also lived at the junction of the lane and the highway, and asked whether he had given anyone permission to drive into the farmyard. Tripp said he had not, so Sherer called the sheriff. Then, watching through binoculars, he saw a man, later identified as Pierce, use an

2

eighteen-inch bar to break the padlock off the bunkhouse door.

By the time Undersheriff John Shilling arrived, five to ten minutes later, Pierce and Ferdinand had removed several items from the bunkhouse and placed them in the pickup. They had also broken the padlock on the back door of the farmhouse, but before they could remove anything from the house, Sherer and Shilling had driven into the farmyard. Shilling testified that he looked into the bed of the pickup truck at that time and saw an old school desk, a box containing several miscellaneous items, and a wall clock. He advised Pierce and Ferdinand of their rights and placed them under arrest. After the sheriff arrived, Pierce acknowledged that the items in the pickup truck, including two items in the cab, had come from the bunkhouse.

Ferdinand's motion to sever her case from Pierce's was denied, and the two were tried as co-defendants. The District Court heard the evidence after the two defendants waived jury trial, and on the same day Judge Rapkoch and the three attorneys visited the Ray place. On the basis of the evidence presented at trial and his personal observation, Judge Rapkoch found that the bunkhouse and farmhouse Pierce and Ferdinand had broken into were "occupied structures" and ruled that their offense therefore was burglary under § 45-6-204(1), MCA. He also ruled that the retail value of $416 assigned to the stolen items by the State's expert witness was the relevant value for determining whether the defendants were guilty of misdemeanor theft or felony theft, and found them guilty of felony theft under § 45-6-301(6), MCA.

3

Pierce, who had a prior burglary conviction and several DUI convictions on his record, received a five-year suspended sentence and was fined $500. Ferdinand, who had no prior criminal history, received a two-year deferred sentence and was fined $250. Both were ordered to pay costs, restitution, and a $20 surcharge.

The issues on appeal are:

1. Whether the State presented sufficient evidence that the buildings Pierce and Ferdinand entered were "occupied structures" so as to support a burglary conviction.

2. Whether the State presented sufficient evidence of the value of the stolen property to support a conviction of felony theft.

I

When sufficiency of evidence is at issue on appeal, our standard of review is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. State v. Bower (Mont. 1992), 833 P.2d 1106, 1110, 49 St.Rep. 586, 588.

Burglary is a felony under § 45-6-204, MCA, and occurs when a person "knowingly enters or remains unlawfully in an occupied structure with the purpose to commit an offense therein." The first issue on appeal is whether the State presented sufficient evidence that the buildings Pierce and Ferdinand entered were "occupied structures." Appellants argued that the buildings at the Ray place were not occupied structures, and that their offense

4

therefore was merely criminal trespass, a misdemeanor under § 45-6-203, MCA. An occupied structure is defined in § 45-2-101(40), MCA, as

> any building, vehicle, or other place suitable for human occupancy or night lodging of persons or for carrying on business, whether or not a person is actually present.

Testimony at the trial established that no one had lived at the Ray place since 1964; that neither the farmhouse nor the bunkhouse had electricity, heat, or running water; and that the house smelled strongly of wild animals and had a leaking roof. Nevertheless, both Sherer and the sheriff testified that they had seen people living in places "a lot worse."

Tripp, who had owned the Ray place since 1947, lived in the house from 1948 to 1952 and now used both the farmhouse and the bunkhouse to store old furniture and appliances. Sherer used the bunkhouse to store fence posts. Tripp visited the house and bunkhouse about once a month, sometimes to poison mice and sometimes just to look around. No one had stayed overnight in the house or in the bunkhouse since 1964.

In considering the defendants' motion to reduce the charge against them to criminal trespass, Judge Rapkoch observed that the bunkhouse was tight and of sound construction, though old, and was suitable for storage and safekeeping of antique items. Such buildings, he said, "have unique and personal value in themselves or are used as natural places for the storage of property which itself has real value to the owners. . . . The owners of such 'mini-ghost towns' . . . are entitled to have them respected."

5

Therefore, the court concluded, the bunkhouse was an occupied structure at the time of the offenses charged.

Under the rule we established in State v. Sunday (1980), 187 Mont. 292, 609 P.2d 1188, a structure suitable for carrying on business and used regularly for that purpose is an "occupied structure," and wrongful entry thereto for the purpose of committing an offense is burglary. Here, the bunkhouse was used regularly by the lessee, Sherer, to store materials needed for his farming business, and by the owner, Tripp, to store household goods. It is an occupied structure, suitable for use in the lessee's farming business, just as the tack shed in Sunday was an occupied structure suitable for carrying on the owners' horse rental business.

We hold that any rational trier of fact could have found the essential elements of the crime of burglary in this instance. The two defendants admitted that they had broken into the bunkhouse, an occupied structure, for the purpose of finding and taking away antique objects. The District Court properly found them guilty of burglary under § 45-6-204, MCA.

## II

The second issue is whether the State presented sufficient evidence to sustain a conviction of felony theft. A person commits theft when he "purposely or knowingly obtains or exerts unauthorized control over property of the owner and has the purpose of depriving the owner of the property." Section 45-6-301(1), MCA. If the property exceeds $300 in value, the theft is felony theft

6

under § 45-6-301(6)(b), MCA. The value of stolen property is the market value at the time and place of the crime. Section 45-2-101(69)(a), MCA.

Pierce and Ferdinand removed the following objects from Tripp's bunkhouse:

    Seth Thomas wall clock
    Two photographs in leather cases
    School desk
    Oil lamp with chimney
    Shaving mug with three brushes
    Hand crank telephone
    Wall mirror with thermometer
    Square glass bottle with cork
    Schilling spice can
    Boraxo hand cleaner can
    Car wash compound

At the trial the State called Patricia Lee Stoos, a school teacher and part time antique dealer who had examined the stolen items in May 1991. She testified that the retail value of these items was $416, though she would pay only $219 if she were to buy them for future resale. If the clock were restored, she said, it alone would be worth $400, though in its present condition its retail value was only $225.

Appellants argue that the relevant value of the stolen items was the wholesale value, or $219, because the owner, Tripp, was not a retail merchant. Appellants distinguish State v. Barker (1984), 211 Mont. 452, 455-56, 685 P.2d 357, 359-60, in which we held that the retail value of a pair of boots stolen from a clothing store was the market value for the purpose of deciding whether the defendant was guilty of felony theft:

    It was not error to instruct that the market value of the
    boots meant their retail price. . . . Certainly here the

7

> wholesale price of the merchant could not be considered
> their market value. . . . The price at which the merchant
> offers to sell his merchandise ordinarily is its market
> value, though not always.

We have applied this rule to property stolen from nonmerchants like Tripp as well as to property stolen from merchants. In State v. Fox (1984), 212 Mont. 488, 689 P.2d 252, for example, we found that testimony by the owner of a retail computer store was sufficient evidence of the value of computer equipment stolen from an apartment. See also State v. Dess (1984), 207 Mont. 468, 674 P.2d 502 (value of bicycles stolen from private owner was established by testimony from retail bicycle shop owners).

The weight of the evidence and the credibility of the witnesses are exclusively the province of the trier of fact. State v. Palmer (1991), 247 Mont. 210, 214, 805 P.2d 580, 582. When conflicting evidence of value is presented, it is for the trier of fact to determine which evidence is dispositive. State v. Ramstead (1990), 243 Mont. 162, 170-71, 793 P.2d 802, 807. Here, any rational trier of fact could have found that the retail value assessed by a local antique dealer was in fact the market value of the stolen goods. The District Court properly adopted that value in denying the appellants' motion to dismiss the felony theft charge.

AFFIRMED.

_____
Justice

8

We concur:

_____
Chief Justice

_____

_____

_____

_____

_____
Justices

9

November 24, 1992

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:


Bradley B. Parrish
Attorney at Law
209 Bank Electric Bldg.
Lewistown, MT 59457

Craig R. Buehler
Attorney at Law
505 West Main St., Ste. 210
Lewistown, MT 59457

Hon. Marc Racicot, Attorney General
Paul D. Johnson, Assistant
Justice Bldg.
Helena, MT 59620

James A. Hubble
Judith Basin County Attorney
P.O. Box 556
Stanford, MT 59479


ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
    Deputy